**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JAMEEL WILSON** | : | **CIVIL ACTION** |
| *Plaintiff* | : | |
| | : | **NO. 15-3409** |
| **v.** | : | |
| | : | |
| **CAROLYN W. COLVIN** | : | |
| **Acting Commissioner of the** | : | |
| **Social Security Administration** | : | |
| *Defendant* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                    NOVEMBER 1, 2016

# MEMORANDUM OPINION

**INTRODUCTION**

On July 24, 2015, Plaintiff Jameel Wilson ("Plaintiff" or "Wilson") filed this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of Defendant Carolyn W. Colvin, Acting Commissioner of the Social Security Administration ("Defendant"), which denied his application for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 1381-1383f.[1]  The ultimate issue for judicial review is whether the final decision is supported by substantial evidence.

Pursuant to 28 U.S.C. § 636(b)(1)(B), this matter was referred to United States Magistrate Judge Marilyn Heffley ("the Magistrate Judge") for a Report and Recommendation ("R&R").  On July 26, 2016, the Magistrate Judge issued a report recommending that Plaintiff's request for review be denied. [ECF 13].  Thereafter, Plaintiff filed timely objections to the R&R,

---

[1]       In the request for judicial review, Plaintiff contends that administrative law judge ("the ALJ") committed error by: (1) failing to appropriately assess and credit the opinion of Dr. David Chomsky, M.D.; (2) making a credibility determination that was not supported by substantial evidence; (3) failing to order a psychologist's or psychiatrist's review to assess his mental impairment; and (4) denying the reopening of prior applications for SSI. [ECF 9 at 2-13].

[ECF 14], Defendant filed a response to the objections, [ECF 16], and Plaintiff filed a reply, [ECF 17].  Thus, this matter is ripe for disposition.

After a thorough *de novo* review of the objections to the R&R, the administrative record,[2] and the parties' numerous submissions, this Court finds merit to Plaintiff's first two objections and, therefore, remands this matter to the Acting Commissioner of the Social Security Administration for further proceedings consistent with this Memorandum Opinion and Order.

**BACKGROUND**

The factual and procedural backgrounds of this case are set forth in detail in the R&R and will be recited herein *only* as needed to address the issues presented by Plaintiff's objections; *to wit*:

Plaintiff was born on April 6, 1973, has an eleventh-grade education, (Tr. at 165, 170), and worked as a professional boxer and forklift operator, although he never filed tax returns. (*Id.* at 60, 170).  On October 26, 2005, November 27, 2009, and August 3, 2011, Plaintiff filed applications for SSI which were each denied.  (*Id.* at 73, 84).

On July 31, 2012, Plaintiff filed the instant application for SSI benefits contending that he suffered from the following conditions: neck injury, spinal cord injury, back injury, shoulder injury, and numbness in his hands and fingers. (*Id.* at 72).  His application was initially denied on September 28, 2012. (*Id.* at 97).  Plaintiff filed a timely request for a hearing on October 25, 2012. (*Id.* at 104).  The hearing was held on November 19, 2013, before Administrative Law Judge William Kurlander ("the ALJ"). (*Id.* at 22, 24).  Plaintiff testified at the hearing, and offered medical evidence from treating and non-treating physicians, including an evaluation conducted by consulting physician David Chomsky, M.D. ("Dr. Chomsky"). (*Id.* at 193-197).

After reviewing the evidence and applying the required five-step sequential analysis,[3] the ALJ concluded that Plaintiff was not disabled. (*Id.* at 81-96).  Specifically, in the decision dated February 26, 2014, the ALJ found that

---

[2]    Citations to the administrative record will be denoted by "Tr." followed by the page number.

[3]    Agency regulations require that the administrative law judge utilize a five-step sequential process to evaluate disability insurance benefits claims.  *See* 20 C.F.R. § 416.920(a)(1).  This process will be explained *infra* at pp. 5-6.

Plaintiff had not engaged in substantial gainful activity since July 31, 2012; that he suffered from the following severe impairments: back disorder, eye disorder, depression, chronic obstructive pulmonary disease ("COPD"), and chronic pain syndrome, (*id.* at 86); that he did not have an impairment that met or medically equaled the severity of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Appendix"),[4] (*id.* at 87); and that he had the residual functional capacity ("RFC")[5] to perform "light work" as defined in 20 C.F.R. § 416.967(b),[6] except:

> (1) Reasoning level 1-2;[7] (2) sit/stand option (by this I mean, if the person is sitting and experiences other pain, they can stand and stretch in place to alleviate their pain and continue working in the standing position if desired. Similarly, if the person is standing and experiences back or other pain, they can sit down to continue their work in a sitting position if desired, in order to alleviate their pain); (3) no climbing rope, scaffolds, ladders; (4) no more than occasional exposure to temperature extremes, wetness or high humidity; (5) no more than occasional postural activity, but no climbing or crawling; (6) no more than occasional exposure to moving machinery and unprotected heights; (7) no more than frequent exposure to atmospheric irritants, such as dust, fumes, odors and gasses; (8) no overhead reaching with the bilateral upper extremities; (9) no more than occasional pushing/pulling with the bilateral upper extremities; (10) no more than occasional pushing/pulling

---

[4]     The Listing of Impairments in Appendix 1, Subpart P, Part 404 of Title 20 of the Code of Federal Regulations is a regulatory device that is used to streamline the decision-making process "by identifying those claimants whose medical impairments are so severe they would be found disabled regardless of their vocational background." *Sullivan v. Zebley,* 493 U.S. 521, 532 (1990) (quoting *Bowen v. Yuckert,* 482 U.S. 137, 153 (1987)). The Listing defines impairments that would prevent an adult, regardless of age, education, or work experience, from performing any gainful activity, not just substantial gainful activity. *Id.*; *see also* 20 C.F.R. § 416.925(a) (purpose of the Listing is to describe impairments "severe enough to prevent a person from doing any gainful activity"). The Listing was designed to operate as a presumption of disability, making further inquiry unnecessary. *Sullivan*, 492 U.S. at 532.

[5]     A claimant's RFC reflects the most the claimant can still do after considering the physical limitations affecting his ability to perform work-related tasks. *See* 20 C.F.R. § 416.945(a)(1).

[6]     Light work is defined as work that includes lifting up to twenty pounds at one time with frequent lifting and carrying of objects weighing up to ten pounds and positions that require a good amount of walking or standing or when they include mostly sitting with some pushing and pulling of arm or leg controls. *See* 20 C.F.R. § 416.967(b).

[7]     The Dictionary of Occupational Titles specifies the type of reasoning capabilities any particular job contained therein requires. 2 U.S. Dep't of Labor, Dictionary of Occupational Titles, 1010–11 (4th ed. 1991). For instance, a job rated reasoning level one requires the ability to understand and carry out simple instructions, whereas a job rated reasoning level two requires the ability to understand and carry out detailed instructions. *Id.* at 1011.

with the bilateral lower extremities; and (11) no more than frequent fingering.[8]

(*Id.* at 88).  Crediting the testimony of the vocational expert ("VE") who testified at the hearing, the ALJ concluded that, considering Plaintiff's age, education, work experience, and RFC, there were jobs, such as ticket taker, sorter, or folding machine operator, that existed in significant numbers in the national economy which Plaintiff was capable of performing and, therefore, he was not disabled. (*Id.* at 92).

On March 13, 2014, Plaintiff filed a timely appeal with the Appeals Council. (*Id.* at 20).  On March 3, 2015, the Appeals Council denied Plaintiff's request for review and affirmed the decision of the ALJ as the final decision of the Commissioner. (*Id.* at 4-6).  On July 24, 2015, Plaintiff filed the instant request for judicial review.

**DISCUSSION**

The Social Security Act provides for judicial review of any "final decision of the Commissioner of Social Security made after a hearing."  42 U.S.C. § 405(g).  The review of a Commissioner's decision is, however, limited in scope.  When reviewing an administrative decision denying social security benefits, the court must uphold any factual determination made by the ALJ that is supported by substantial evidence.  *Id.*  That is, the court's scope of review is limited to determining whether the ALJ applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the ALJ's findings of fact.  *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005).

Substantial evidence "does not mean a large or considerable amount of evidence, but rather, such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Hantranft v. Apfel,* 181 F.3d 358, 360 (3d Cir. 1999) (quoting *Pierce v. Underwood,* 487 U.S. 552, 564-65 (1988)); *Rutherford*, 399 F.3d at 552.  Substantial evidence is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence."

---

[8]     Fingering is defined as "[p]icking, pinching, or otherwise working with the fingers primarily rather than with the whole hand or arm …." SSR 85-15, 1985 WL 56857, at *7 (Jan. 1, 1985).

*Rutherford* at 552.   Although the court reviews the record as a whole to determine whether substantial evidence supports a factual finding, it may not re-weigh the evidence or substitute its own conclusions for those of the administrative law judge.   *Chandler v. Comm'r of Soc. Sec.,* 667 F.3d 356, 359 (3d Cir. 2011); *Monsour Med. Ctr. v. Heckler,* 806 F.2d 1185, 1190-91 (3d Cir. 1986).   Credibility determinations are reserved for the administrative law judge.   *Van Horn v. Schweiker,* 717 F.2d 871, 873 (3d Cir. 1983) (internal citations omitted).   The court must conduct a plenary review of the administrative law judge's legal conclusions, *Payton v. Barnhart,* 416 F. Supp. 2d 385, 387 (E.D. Pa. 2006), and may overturn the decision for legal error even if it finds that the decision was supported by substantial evidence.   *Id.*

To prove entitlement to social security benefits, a claimant must demonstrate an inability to engage in substantial gainful activity because of a medically determinable physical and/or mental impairment "which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months."   42 U.S.C. § 423(d)(1)(A).   As noted, agency regulations provide for a five-step sequential evaluation process for determining whether an individual is disabled.   *See* 20 C.F.R. § 416.920(a)(1).   The steps are followed in a sequential order, and if the claimant is determined to be, or not to be, disabled at a particular step of the evaluation process, the evaluation will not proceed to the next step.   *Id.* § 416.920(a)(4). The five-step sequential evaluation process requires the Commissioner to consider the following:

> At step one, the [administrative law judge or ALJ] must determine whether the claimant is currently engaging in substantial gainful activity.   If the claimant is found to be engaged in substantial activity, the disability claim will be denied; otherwise the evaluation proceeds to step two.
>
> At step two, the [the ALJ] must determine whether the claimant has an impairment that is severe or a combination of impairments that is severe.   If the claimant fails to show that the impairment or combination of impairments is "severe," claimant is ineligible for disability benefits; otherwise, the evaluation proceeds to step three.

> At step three, the [the ALJ] must determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of a listed impairment. If the claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five.
>
> At step four, the ALJ must first consider whether the claimant retains the residual functional capacity to perform past relevant work. The claimant bears the burden of demonstrating an inability to return to past relevant work.
>
> If the claimant is unable to resume [his] former occupation, the evaluation moves to the final step. At step five, the ALJ must determine whether the claimant, consistent with the claimant's medical impairments, age, education, past work experience, and residual functional capacity, is capable of performing other available work in the national economy. The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether claimant is capable of performing work and is not disabled.

20 C.F.R. § 416.920(a)(4)(i)-(v) (applying same five-step test when evaluating SSI claims); *see also Plummer v. Apfel,* 186 F.3d 422, 428 (3d Cir. 1999) (internal citations omitted); *Dismuke v. Comm'r of Soc. Sec.,* 309 F. App'x 613, 615-16 (3d Cir. 2009).

As stated, the Magistrate Judge recommended that Plaintiff's request for judicial review be denied. Plaintiff challenges the Magistrate Judge's recommendation and offers five (5) objections which are similar to the issues raised in his request for judicial review. Essentially, Plaintiff contends that the Magistrate Judge erred in finding that the ALJ: (1) appropriately assessed and credited the opinion of Dr. David Chomsky; (2) properly assessed Plaintiff's credibility; (3) correctly determined that a review by a psychologist and/or psychiatrist to assess a mental impairment was not necessary; (4) adequately assessed Plaintiff's residual functional capacity ("RFC"); and (5) properly refused to reopen Plaintiff's prior applications for SSI.

When considering objections to a magistrate judge's report and recommendation, a court must undertake a *de novo* review of the portions of the report and recommendation to which the plaintiff has objected. *See* 28 U.S.C. § 636(b)(1); *Cont'l Cas. Co. v. Dominick D'Andrea, Inc.*, 150 F.3d 245, 250 (3d Cir. 1998). The court "may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Here,

while this Court finds merit to Plaintiff's first two objections, in the interest of judicial economy, all of Plaintiff's objections will be addressed.

### First Objection

In his first objection to the R&R, Plaintiff argues that the ALJ failed to appropriately assess and credit the opinions of Dr. Chomsky, a non-treating physician, offered by Plaintiff in support of his application.  [ECF 14 at 1-2].  Specifically, Plaintiff contends that the ALJ failed to provide adequate justification for the partial rejection of Dr. Chomsky's opinion, in contravention of the guidelines set forth in 20 C.F.R. § 416.927(c) and *Burnett v. Comm'r of Soc. Sec. Admin.,* 220 F.3d 112 (3d Cir. 2000), and failed to credit Dr. Chomsky's opinion regarding Plaintiff's physical limitations as to: (1) standing and walking; (2) and carrying and lifting. [ECF 14 at 1-4].  In response, Defendant contends that though an ALJ is not required to discuss every piece of evidence in the record in the decision, the ALJ did not commit any error since Dr. Chomsky's opinions were largely credited and incorporated in the residual functional capacity (RFC) assessment by the ALJ at step four of the sequential analysis.

Undisputedly, an ALJ must consider all relevant evidence, including medical evidence, in the record when assessing a claimant's RFC at step four.  *Fargnoli v. Halter,* 247 F.3d 34, 41-42 (3d Cir. 2001).  Social Security Administration ("SSA") rulings and regulations provide for a framework under which medical opinion evidence must be considered.  *See generally* 20 C.F.R. § 416.927 (providing the framework for the evaluation of opinion evidence in SSI cases).  These rules provide that medical evidence or opinions in an administrative record may come from treating, examining, or non-treating physicians.  *See* 20 C.F.R. § 416.927(c)(1)-(2), 20 C.F.R. § 416.902 (defining each classification of provider).[9]  Further, the opinions of a claimant's treating

---

[9]     A treating source is defined as a physician, psychologist or otherwise acceptable medical source who provides or has provided a claimant with medical treatment or evaluation, and who has or had an

physicians should be given greater weight than the opinions of non-treating physicians, since treating physicians are usually more familiar with a claimant's conditions. *Id.* § 416.927(c)(2); *see also Morales v. Apfel,* 225 F.3d 310, 317 (3d Cir. 2000) ("[A] cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially when their opinions reflect expert judgment based on a continuing observation over a prolonged period of time."). Where an ALJ finds that no treating source opinion is entitled to controlling weight, the regulations provide that the weight of all non-controlling opinions by treating, non-treating, and non-examining medical sources should be evaluated based on the following factors: (1) the length of treatment and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the opinion's support by medical evidence; (4) the opinion's consistency with the record as a whole; (5) the treating physician's specialization; (6) any other factors brought to the ALJ's attention that tend to support or contradict the opinion. 20 C.F.R. § 416.927(c)(1)-(6).

Even when an ALJ gives considerable weight to a medical opinion, physician's opinions are not binding upon an ALJ, who is free to reject a medical source's conclusions. *Chandler v. Comm'r of Soc. Sec.,* 667 F.3d 356, 361 (3d Cir. 2012); *see also Brown v. Astrue,* 649 F.3d 193, 197 n.2 (3d Cir. 2011) ("[t]he law is clear ... that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity."). However, when rejecting medical evidence, the ALJ must give some indication of which evidence is rejected and the reason(s) for discounting such evidence to enable a reviewing court to determine whether "significant probative evidence was not credited or simply ignored." *Cotter v. Harris,* 642 F.2d 700, 705 (3d Cir. 1981); *see also*

---

ongoing treatment relationship with the claimant. 20 C.F.R. § 416.902. A non-treating, or examining, source is defined as an acceptable medical source that has examined the claimant but did not have an ongoing treatment relationship with the claimant, including, *inter alia,* consultative examiners. *Id.* A non-examining source is defined as an acceptable medical source that has not examined the claimant, but has provided an opinion in the case, including, *inter alia,* a state agency reviewing doctor. *Id.*

*Burnett v. Comm'r of Soc. Sec.,* 220 F.3d 112, 122 (3d Cir. 2000) (vacating and remanding a dismissal of a disability benefits claim when ALJ failed to mention and resolve conflicts found within the medical evidence found in the record).

With these principals in mind, this Court will address Plaintiff's first objection regarding Dr. Chomsky, who performed a consultative examination of Plaintiff on October 28, 2011.  (*See* Tr. at 87, 193-97).  In his report, Dr. Chomsky opined, *inter alia*, that Plaintiff could walk up to 20 minutes at a time for up to one to two hours a day; had no limitations with respect to sitting (hereinafter "the sit/stand", opinions), (Tr. at 196); and had limitations with respect to carrying and lifting, and could lift up to 30 pounds but could not carry even 10-pound objects without experiencing pain (hereinafter "the carrying/lifting opinion").  *Id.*  In his analysis, the ALJ found, at step four of the evaluation process, that Plaintiff has the residual functional capacity ("RFC") to perform light work[10] with specific exceptions, among these, an at-will sit/stand option. [11] (R&R at 4).

---

[10]     Light work is defined as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or *when it involves sitting most of the time with some pushing and pulling of arm or leg controls.* To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 416.967(b) (emphasis added).  Social Security Ruling 83-10 further clarifies that "since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a *total* of approximately 6 hours of an 8-hour workday.  *Sitting may occur intermittently during the remaining time.*"  SSR 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983) (emphasis added).

[11]     In addition to Dr. Chomsky's report, the ALJ considered the treatment notes of Dr. Eric Williams, an orthopedist who had treated Plaintiff in 2012 for neck pain; the monthly progress notes of Dr. Alexander Fine covering the period of April 2011 through October 2013, which documented Plaintiff's continued complaints of neck and back pain; the treatment notes of Dr. Robert Dudnick, a

Plaintiff objects and contends that these step-four findings are inconsistent with Dr. Chomsky's opinions as to his sitting/standing and carrying/lifting limitations, and, consequently, were not based on substantial evidence in the record. After a careful *de novo* review of the record, this Court agrees, and finds that the ALJ failed to discuss or explain the contradictory medical evidence in the record regarding Plaintiff's physical limitations. As noted *supra,* the ALJ found that Plaintiff has the RFC to perform *light work* with certain exceptions. In reaching this assessment, however, the ALJ offered little or no explanation, analysis or insight on how he reconciled the competing opinions of Plaintiff's treating physicians with those of Dr. Chomsky. Although the ALJ indicated that he afforded great weight to Dr. Chomsky's report, (Tr. at 91), his step-four finding belies this affirmation since it suggests, without any explanation, an implicit rejection of Dr. Chomsky's carrying/lifting opinion when compared to the ALJ's finding of RFC to do light work. As defined, light work involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing *up to 10 pounds*." 20 C.F.R. § 416.967(b) (emphasis added). Yet, Dr. Chomsky opined that Plaintiff was incapable of carrying even 10-pound objects without pain. (Tr. at 196). The ALJ neither reconciled this inconsistency nor explicitly rejected Dr. Chomsky's carrying/lifting opinion. This omission violates the Third Circuit Court of Appeal's directives in *Burnett* and *Cotter*, which require an ALJ to give some reason for discounting the evidence which he rejects. *See Burnett,* 220 F.3d at 122 (3d Cir. 2000); *Cotter,* 642 F.2d at 705.

While it is possible, as both Defendant and the Magistrate Judge posit, that the ALJ relied upon the inconsistent medical evidence in the record, particularly the opinions of Plaintiff's treating physicians, to conclude that Plaintiff has the RFC to perform limited light work, the ALJ

---

gastroenterologist, who treated Plaintiff on September 21, 2012; and a report from state agency physician Dr. Kurt Mass when making his findings at step four. (*See* Tr. at 87, 90-91).

provided no adequate explanation on how this conclusion was reached.  Although the ALJ is not required to accept Dr. Chomsky's carrying/lifting opinion, the ALJ is required "to be explicit about what evidence was considered and what evidence was rejected." *Frazier v. Comm'r of Soc. Sec.,* 240 F. App'x 495, 498 (3d Cir. 2007) (citing *Cotter,* 642 F.2d at 705).  Because the ALJ failed to adequately articulate the evidentiary basis for his step-four finding, it is possible that the ALJ rejected Dr. Chomsky's carrying/lifting opinion.  If that is the case, the directives set forth in *Burnett* and *Cotter* require him to state as much and give a reason for discounting the same. If, on the other hand, the ALJ accepted Dr. Chomsky's carrying/lifting opinion, then the ALJ's step-four finding is not supported by substantial evidence given the demands of light work as defined by social security regulations.

Given this uncertainty, this Court agrees with Plaintiff that the ALJ's analysis at step four is incomplete and inadequate.  It is impossible to discern from the ALJ's decision what medical evidence has been rejected and what medical evidence has been credited.  Accordingly, this Court cannot conduct a meaningful review of whether substantial evidence supports the ALJ's findings at step four.   This Court will remand this matter to the ALJ, who is directed to consider all of the medical opinion evidence in the record and explain what weight, if any, he accords to each opinion when making findings at step four of the five-step sequential analysis.

### *Second Objection*

Plaintiff objects to the Magistrate Judge's finding that the ALJ's assessment of Plaintiff's credibility was legally sound.  Specifically, Plaintiff argues that, rather than considering the enumerated factors to assess credibility, the ALJ, instead, found him not credible solely on the basis of his failure to file tax returns on earnings received during his boxing career.  Defendant counters that the ALJ provided valid reasons for discounting Plaintiff's credibility which are

supported by substantial evidence in the record, and that this Court should defer to the ALJ's assessment of Plaintiff's credibility.

Generally, a court affords an administrative law judge's assessment of credibility great deference because the ALJ is in the best position to evaluate the demeanor and attitude of a claimant. *See, e.g. Fargnoli v. Massanari,* 247 F.3d 34, 43 (3d Cir. 2001); *Wilson v. Apfel,* 1999 WL 993723, *3 (E.D. Pa. Oct. 29, 1999). However, this deference is not absolute. Social Security Ruling 96–7p provides the procedure to be used in assessing the credibility of a Social Security claimant's statements. *See Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims–Assessing the Credibility of an Individual's Statements,* SSR 96–7p, 1996 WL 374186 at *1 (July 2, 1996) [hereinafter "SSR 96-7p"]. This rule provides a two-step analysis for evaluating a claimant's credibility, including statements describing pain or limitations. *See* 20 C.F.R. § 416.929; SSR 96–7p, 1996 WL 374186 at *2. First, the ALJ must determine whether a claimant has a medically determinable physical or mental impairment that can reasonably be expected to produce the symptoms alleged. 20 C.F.R. § 416.929(c), SSR 96-7p, 1996 WL 374186 at *2. Second, the ALJ must evaluate the intensity, persistence, and functional limitations of those symptoms by considering objective medical evidence and other evidence, including: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (5) treatment, other than medication, received for relief of pain or other symptoms; (6) any measures used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 416.929(c), SSR 96-7p, 1996 WL

374186 at *3.  It is not sufficient for an ALJ to "to make a single, conclusory statement" that the Plaintiff is not credible; rather:

> [i]n determining the credibility of the [claimant's] statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record.

SSR 96-7p, 1996 WL 374186 at *3.  Where an ALJ has adequately explained the reasons for his credibility determination, the court should be reluctant to disturb the ALJ's findings.  *See Schaudeck v. Comm'r of Soc. Sec.,* 181 F.3d 429, 433 (3d Cir. 1999).  Nevertheless, an ALJ's assessment of a claimant's credibility must be supported by substantial evidence.  *Id.*; *see also Smith v. Califano,* 637 F.2d 968, 970 (noting that district courts "retain a responsibility to scrutinize the entire record and to reverse or remand if the Secretary's decision is not supported by substantial evidence").

Here, in his decision, the ALJ notes that he afforded Plaintiff's testimony "very, very little weight." (Tr. at 90).  Although the ALJ mentions other evidence that impugns on Plaintiff's credibility, including Plaintiff's testimony that he continues to drive despite his eye disorder and that he continued to box for two years after undergoing a cervical fusion, (*id.*), the ALJ's credibility finding appears to rest almost exclusively on Plaintiff's failure to pay taxes.  (*Id.* at 89).  The failure to file or pay taxes is relevant to evaluate the credibility of a witness, *see, e.g., United States v. Sullivan,* 803 F.2d 87, 90-91 (3d Cir. 1986).  However, social security regulations clearly mandate the consideration of other factors when assessing credibility.  The ALJ's failure to assess Plaintiff's credibility, as required by SSR 96-7p, warrants remand.  *See, e.g., Torres v. Comm'r of Soc. Sec.,* 2016 WL 5339724, at *4 (D.N.J. Sept. 23, 2016) (concluding that an ALJ's "failure to address and/or consider Plaintiff's statement regarding his

inability to afford medical treatment" constitutes cause for remand).  It is unclear whether the ALJ considered all the enumerated factors when evaluating Plaintiff's credibility, particularly since objective medical evidence exists to support Plaintiff's subjective complaints of pain. Accordingly, this matter is remanded for the ALJ to properly reassess Plaintiff's credibility consistent with 20 C.F.R. § 416.929(c) and SSR 96-7p.

### Third Objection

In his third objection, Plaintiff contends that Social Security Rule 96-6p ("SSR 96-6p") imposes an affirmative duty on an ALJ to obtain expert medical testimony on listing equivalence at step three.[12]  This Court disagrees.  As noted by the Magistrate Judge, SSR 96-6p does not require an ALJ to obtain the opinion of a state agency psychologist or psychiatrist to render an opinion at step three when the medical evidence in the record is sufficient to make a decision. Even if the rule required such an opinion, the failure to obtain one here constitutes, at most,

---

[12]     SSR 96-6p provides that, although an ALJ, as the determiner of the ultimate question of Listing equivalence, is not bound by medical opinions or findings, "longstanding policy requires that the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence on the evidence before the administrative law judge or the Appeals Council must be *received into the record as expert opinion evidence and given appropriate weight*." SSR 96-6p, 1996 WL 374180, at *3 (July 2, 1996) (emphasis added).  Some instances require the ALJ to hear additional evidence from a medical expert. *Id.*  When the medical evidence in the record is sufficient to make a decision, the ALJ may rely on it alone.  *Id.*  SSR 96-6p requires an ALJ to obtain an updated medical opinion as to the issue of Listing equivalence only in the following two circumstances:

> When no additional medical evidence is received, but in the opinion of the administrative law judge or the Appeals Council the symptoms, signs, and laboratory findings reported in the case record suggest that a judgment of equivalence may be reasonable; or

> When additional medical evidence is received that in the opinion of the [ALJ] or the Appeals Council may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments.

*Id.; see also Walker v. Colvin,* 2016 WL 491724, at *4 (E.D. Pa.  Feb. 9, 2016) (noting that "the plain language" of SSR 96-6p makes it clearly that it is "entirely up to the ALJ to determine whether either of these circumstances is present").

harmless error because Plaintiff did not allege a disabling mental impairment in his application for benefits.

As stated, an ALJ's task at step three is to determine whether the claimant's impairment or combination of impairments is of a severity sufficient to meet or medically equal the criteria of an impairment listed in the Appendix. 20 C.F.R. § 416.920(a)(4)(iii).  In his application for SSI benefits, Plaintiff claimed that he suffered from a neck injury, spinal cord injury, back injury, shoulder injury, and numbness in his hands and fingers.  No mention was made in his application or at the hearing that he suffered from or claimed a mental impairment. Notwithstanding, the ALJ noted that Dr. Chomsky's opinion stated that Plaintiff suffered a severe mental impairment, i.e., depression, and considered this diagnosis at step two of the sequential analysis. (Tr. at 87).  However, at step three, the ALJ found that the severity of Plaintiff's mental impairment did not meet or medically equal the criteria of Listing 12.04,[13] (Tr.

---

[13]     Listing 12.04 sets forth the criteria for affective disorders, including depression. The requirements of Listing 12.04 are, in relevant part:

    A. Medically documented persistence, either continuous or intermittent, of one of the following:
        1. Depressive syndrome characterized by at least four of the following:
            a. Anhedonia or pervasive loss of interest in almost all activities; or
            b. Appetite disturbance with change in weight; or
            c. Sleep disturbance; or
            d. Psychomotor agitation or retardation; or
            e. Decreased energy; or
            f. Feelings of guilt or worthlessness; or
            g. Difficulty concentrating or thinking; or
            h. Thoughts of suicide; or
            i. Hallucinations, delusions, or paranoid thinking; OR
        2. Manic syndrome ...; or
        3. Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive symptoms (and currently characterized by either or both syndromes);
    B. Resulting in at least two of the following:
        1. Marked restriction of activities of daily living; or
        2. Marked difficulties in maintaining social functioning; or;
        3. Marked difficulties in maintaining concentration, persistence, or pace; or
        4. Repeated episodes of decompensation, each of extended duration.

at 87-89), because the evidence in the record showed that Plaintiff suffered "no restriction of activities of daily living, no difficulties in maintaining social functioning," and only "moderate difficulties in maintaining concentration, persistence, or pace." (Tr. at 88).  Despite this analysis, Plaintiff contends that the ALJ ran afoul of Social Security Ruling 96-6p when he rendered the decision without consulting a state agency psychologist or psychiatrist on the issue of whether Plaintiff's depression satisfied the criteria of Listing 12.04.

When evaluating the severity of a claimant's mental impairment(s), an ALJ is directed to apply a "special technique" to "rate the degree of functional limitation resulting from the impairment(s)."   20 C.F.R. § 416.920a(b)(1)-(2).   The regulations set forth "four broad functional areas" in which the ALJ must rate the degree of the claimant's functional limitation: (1) activities of daily living, (2) social functioning, (3) concentration, persistence, or pace, and (4) deterioration or decompensation in work or work-like settings, *id.* § 416.920a(c)(3), using a five-point scale of "[n]one, mild, moderate, marked, and extreme," to rate the first three functional areas, and a four-point scale of "[n]one, one or two, three, [and] four or more" to rate the fourth functional area, *id.* § 416.920a(c)(4).  The regulations explicitly require the ALJ to "document application of the technique in the decision," *id.* § 416.920a(e), including "a specific finding as to the degree of limitation in each of the functional areas." *Id.* § 416.920a(e).

The fact that Plaintiff did not allege a disabling mental impairment in his application or at the hearing is significant.[14]   It is well-settled that an ALJ is under no obligation to consider

---

20 C.F.R. Pt. 404, Subpt. P., App.1 § 12.04.

[14]      The impairments Plaintiff alleges in his application for SSI benefits, dated August 9, 2012, relate to ailments of the neck, spinal cord, back, shoulders, and hands. (Tr. at 97).  While Dr. Chomsky diagnosed Plaintiff with situational depression, he did not observe any functional limitations resulting from the diagnosis. (Tr. at 193-97).  It is thus unsurprising that Plaintiff did not allege, in either his application or at the administrative hearing, that his depression was a disabling impairment.

impairments that a claimant does not allege are disabling. *Podsiad v. Astrue,* 2010 WL 662211, at *21 (D. Del. Feb. 22, 2010) (citing *Rutherford v. Barnhart,* 399 F.3d 546, 552 (3d Cir. 2005)); *see also Zonak v. Comm'r of Soc. Sec.,* 2008 WL 2839101, at *2 (3d Cir. Jul. 24, 2008) (finding that ALJ did not err in failing to determine whether claimant's obesity met or medically equaled a listing at step three when claimant did not allege obesity was a disabling impairment). Despite the fact that Plaintiff did not claim or assert a mental impairment at the time of his application, the ALJ acknowledged at step two of the sequential analysis that Plaintiff's depression qualified as a severe impairment and concluded at step three that it neither met nor medically equaled Listing 12.04. (Tr. at 88).

Contrary to Plaintiff's assertions, SSR 96-6p does not "impose an affirmative duty on an ALJ to seek out a medical opinion on the equivalency issue." *Walker v. Colvin,* 2016 WL 491724, at *4 (W.D. Pa. Feb. 9, 2016). Rather, it simply instructs an ALJ on what must be done with an existing finding by a physician or psychologist designated by the Commissioner on the equivalence issue: receive it into the record and treat it like any other medical opinion from a non-examining source. *Id.* As the Magistrate Judge noted, even if SSR 96-6p or the regulations imposed such a requirement, the ALJ's failure to obtain an opinion as to whether Plaintiff's mental impairments equaled any of the listings amounts to harmless error because Plaintiff never alleged that he suffered a mental impairment or that any alleged mental impairment satisfied listing criteria. *See id.* at *4 (affirming reviewing physician's failure to consider physical listing equivalence where plaintiff's disability application claimed only mental impairments); *Jordan v. Astrue,* 2009 WL 2957777, at *7 (W.D. Pa. Sept. 10, 2009) (finding that the ALJ was not required to consult reviewing physician where plaintiff did not claim that new impairment met or equaled a listing). Accordingly, this objection is overruled.

17

### Fourth Objection

In his fourth objection, Plaintiff argues that the ALJ failed to account for all of his mental health limitations when assessing Plaintiff's RFC at step four of the sequential analysis.  In his opening brief, Plaintiff makes no mention of any faults in the ALJ's step-four analysis save for those that are the subject of his third objection *supra*.  In fact, this argument was raised for the first time in Plaintiff's reply brief.  Arguments not raised in an appellant's opening brief are deemed waived.  *See Lucas v. Barnhart*, 184 F. App'x 204, 206 n.1 (3d Cir. 2006); *Kost v. Kozakiewicz*, 1 F.3d 176, 182 (3d Cir. 1993).  [*See* Doc. No. 11 at 8-10].  Therefore, the Magistrate Judge correctly rejected this argument.

### Fifth Objection

Plaintiff's final objection pertains to the ALJ's decision not to reopen Plaintiff's prior SSI applications dated October 26, 2005, November 27, 2009, and August 3, 2011, respectively.  The ALJ had declined to reopen these applications because he found that the current application was not filed within two years of the date of the initial determinations of his earlier applications, as required by 20 C.F.R. § 416.1488.  Plaintiff argues that the ALJ miscalculated the prescribed two-year window within which his prior SSI applications could be reopened and, as such, erred when declining to reopen Plaintiff's earlier applications.  Defendant concedes the error as to the 2011 application but argues that, in spite of the error, the ALJ properly exercised his discretion under the confines of the regulations to deny Plaintiff's request.  In the alternative, Defendant argues that even assuming the ALJ abused this discretion, the court lacks jurisdiction to review the ALJ's decision.  Defendant is correct on both counts.

A claimant may request that an SSI application be reopened within twelve months of the date of the notice of the initial determination for "any reason," and within two years of the same

18

date "for good cause." 20 C.F.R. § 416.1488(a)-(b).  A claimant establishes "good cause" by (1) furnishing new and material evidence; (2) demonstrating that a clerical error was made in the computation or re-computation of benefits; or (3) offering evidence in the administrative record "that clearly shows that an error was made." *Id.* § 416.1489(a)(1)-(3).

Given the regulations and these limitations, Plaintiff's requests to reopen his 2005 and 2009 applications at the time that he filed the instant application would be untimely.  However, as the Magistrate Judge noted, the ALJ erred when calculating the timeliness of his request to reopen his 2011 application. [*See* ECF 13 at 22].  On July 31, 2012, Plaintiff filed the current application requesting, *inter alia*, a review of the Commissioner's decision to deny his prior applications.  Clearly, the filing date of Plaintiff's current application was within one year of the initial denial of his August 2011 application.  The ALJ could have conceivably reopened Plaintiff's August 2011 application for *any* reason, with or without a showing of good cause.  *See* 20 C.F.R. § 416.1488(a).

Assuming that the ALJ abused his discretion when refusing to reopen Plaintiff's 2005 and 2009 SSI applications, as Plaintiff posits, this Court lacks jurisdiction to review said refusal.  Judicial review of final decisions on claims arising under Title II or Title XVI of the Social Security Act is provided for and limited by Sections 205(g) and (h) of the Act, applicable to SSI cases by 42 U.S.C. § 1383(c)(3).[15]  A federal district court lacks subject matter jurisdiction under Section 205(g) to review alleged abuses of agency discretion in refusing to reopen claims for social security benefits.  *See Califano v. Sanders,* 430 U.S. 99, 107-09 (1977); *Tobak v. Apfel,*

---

[15]     Pursuant to 42 U.S.C. § 1383(c)(3), the Commissioner's final determination after an administrative hearing not to award SSI benefits is subject to judicial review to the same extent as provided in Section 205(g) of the Social Security Act.  42 U.S.C. § 1383(c)(3).  Section 205(g) provides that a district court has jurisdiction over "any final decision of the Commissioner of Social Security made after a hearing to which [the claimant] was a party, irrespective of the amount in controversy."  *Id.* at § 405(g).   Section 205(h) of the Act precludes judicial review of the "findings of fact or decision of the Commissioner of Social Security … except as herein provided." *Id.* § 405(h).

195 F.3d 183, 187 (3d Cir. 1999).   As the Supreme Court explained in *Califano,* a Commissioner's decision not to reopen a prior determination is not a "final decision . . . made after a hearing" for the purposes of Section 205(g), and thus, is generally unreviewable even if there was a hearing before an ALJ in the case.   *Califano,* 430 U.S. at 107-08.   Federal courts do, however, have jurisdiction to entertain constitutional questions, which are "unsuited to resolution in administrative hearing procedures . . . ." *Id.* at 109.

Plaintiff seeks to premise this Court's jurisdiction on the narrow exception carved out for colorable constitutional claims.   However, Plaintiff raised the constitutional claim for the first time in his objections to the R&R.   Thus, this argument has been waived.   *See, e.g., Jimenez v. Barnhart,* 46 F. App'x 684, 685 (3d Cir. 2002) ("[B]ecause [claimant] raised the argument that she is entitled to a closed period of disability for the first time in her objections to the Magistrate Judge's Report and Recommendations, and not in her opening brief, we deem this argument waived.").   Plaintiff also does not specify how the Commissioner's decision constituted a violation of his due process rights.   *See Shoats v. Horn,* 213 F.3d 140, 143 (3d Cir. 2000) (finding no deprivation of due process in the absence of a protected interest).   Absent a colorable constitutional claim, this Court lacks the jurisdiction to review the Commissioner's decision not to reopen Plaintiff's prior SSI applications.   Accordingly, Plaintiff's fifth and final objection is overruled.

**CONCLUSION**

For the reasons stated herein, this matter is remanded to the Acting Commissioner of the Social Security Administration pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings consistent with this Memorandum Opinion.

NITZA I. QUIÑONES ALEJANDRO, USDC, J

20